### BABE GAY v. THE STATE.

#### No. 3996.    Decided April 14, 1909.

**Carrying Pistol—Insufficiency of the Evidence.**

Where upon trial for unlawfully carrying a pistol the testimony showed that the witness, defendant and others were on horseback at night, and that some one in the crowd said he was going to shoot, and that a shot was fired but witness did not know who fired the shot and saw no pistol on or about defendant; and defendant denied on the witness stand that he fired the shot or had a pistol, the conviction could not be sustained.

Appeal from the County Court of McLennan. Tried below before the Hon. J. W. Baker.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Geo. N. Denton,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is an appeal from a conviction had in the County Court of McLennan County, Texas, on a charge of unlawfully carrying a pistol.

The testimony of the State consists in the evidence of one witness, to wit: Rivers Torrence, who testified as follows: "I live in McLennan County, Texas, near the town of Elk; have lived there more than twenty years. I know the defendant Babe Gay; knew him about two years before this offense is alleged to have occurred. I knew him in the fall or winter of 1906. Sometime in November of that year I was at Axtel; it was Sunday night, about nine or ten o'clock, after church; there was quite a crowd and some were horseback. I was horseback and the defendant was horseback; the night was very dark; it was misting rain and pretty cold; you could not see your hand before you. Just as I was getting on my horse, or had gotten on my horse, I heard some one say: 'Look out, I am going to shoot.' I said: 'Don't do it,' and about that time a pistol fired, and I could hear the sound of horses' feet running; a second shot was fired about the time they crossed the railroad; there were

several on horses that night at the time I heard the shot fired, besides the defendant. I only knew two of them, besides the defendant; their names are Johnnie Moore and F. A. Morrow; these men were on horseback, and there were several others on horseback I did not know in the dark; they were all in the road at the time the shot was fired and were running their horses. I was just getting on my horse. The defendant was just to my right when I was getting on my horse; it was so dark I could not recognize anyone. I did not see a pistol in the hands of the defendant, or anyone else; it was too dark. I could not tell which of the men on horses fired the shot. I know Babe Gay's voice. I think it was the voice of Babe Gay who said, 'Look out, I am going to shoot.'

"On cross-examination the witness said: It was a very dark night and was misting rain; you could not recognize any one it was so dark. There were a number of men in the road at or near where the defendant was, and near where I heard the voice; they began running their horses about the time I heard the shot, and ran across the railroad, and about the time they crossed the railroad I heard another shot fired. I knew the names of two of the parties in the crowd on horseback. They were Johnnie Moore and F. A. Morrow. I can not be certain that the voice I heard was the voice of Babe Gay; it could have been the voice of either of the two men I heard in the crowd, whom I did not know. I never saw a pistol in the hands of the defendant that night, and did not see the handle, barrel or cylinder of the pistol. I will not swear that the defendant fired that shot, and I will not swear that the voice I heard was the voice of the defendant. I rode with the defendant that night after the shots were fired. I did not see a pistol on him, and he did not tell me that he was the one who fired the shot. I rode with him about a mile after we left Axtel; we discussed the matter of the firing of the shot. The defendant never admitted that he was guilty of having the pistol. I did not say that Gabe Pillot, the deputy sheriff, would about accuse me of having that pistol, but I did not have a pistol that night, and I did not do the shooting. Afterwards I was accused of having the pistol, but I have never been arrested for it. We did ride fast that night after we left Axtel. It was cold and rainy, and I did not have my overcoat. I had known Babe Gay only a short time before this occurrence; this all occurred in McLennan County, Texas, some time in November, 1906. I do not know the exact date."

Appellant, in his own behalf, took the stand, and denied that he had a pistol on the occasion named or had fired it off. Appellant's counsel insist that the evidence is insufficient to sustain a conviction, and we believe, in the light of the entire record, that this contention must be sustained. It is possible, of course, that the appellant in this case is guilty, but we do not believe, on full reflection, that we would be justified in sustaining this conviction and establishing the precedent

of sustaining a conviction on such inconclusive and vague testimony.

For the reasons that the evidence is, in our judgment, insufficient, the judgment of conviction is reversed, and the cause remanded.

*Reversed and remanded.*